UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| In Re ) | |
| ) | In Bankruptcy |
| CAROL J. REID, ) | |
| ) | Case No. 04-70335 |
| Debtor. ) | |
| ) | |
| ———————————————— ) | |
| ) | |
| CAROL J. REID, f/k/a ) | |
| C. JEAN THOMAS-BEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adversary No. 04-7071 |
| ) | |
| SALLIE MAE SERVICING CORP. ) | |
| and TEXAS GUARANTEED STUDENT ) | |
| LOAN CORPORATION, ) | |
| ) | |
| Defendants. ) | |

# OPINION

This matter came before the Court for trial on Debtor's Complaint to Determine Dischargeability of Debt filed April 16, 2004. At issue is whether Debtor's student loan obligation to the Texas Guaranteed Student Loan Corporation ("Defendant") is dischargeable in her bankruptcy proceedings.

Debtor filed her voluntary Chapter 7 petition in bankruptcy on January 30, 2004. Debtor listed Sallie Mae Servicing Corp. ("Sallie Mae") as an unsecured creditor with a claim in the amount of $18,000 arising from student loans Debtor obtained between 1985

-1-

and 1988 in order to attend Southern Illinois University School of Law. Subsequent to 1988, Debtor actually received a federally guaranteed consolidation loan from Texas Guaranteed Student Loan Corp. in the amount of $27,523. Said loan consolidated various student loans made during the years 1985 through 1988 by Sallie Mae. [Thus, Sallie Mae is a defendant in name only in this proceeding.] The amount owed on the subject loan as of February, 2004, is $88,244. The loan bears an interest rate of 9%. Debtor filed this adversary proceeding in an attempt to discharge this debt.

Plaintiff seeks to discharge her debt pursuant to 11 U.S.C. § 523(a)(8), which provides as follows:

> (a) A discharge under section 727. . . does not discharge an individual debtor from any debt –
>
> > (8) for an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or part by a governmental unit or nonprofit institution, or for an obligation to repay funds received, as an educational benefit, scholarships, or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents[.]

The Bankruptcy Code does not define "undue hardship," but the Seventh Circuit has adopted the Second Circuit's three-pronged test for evaluating such a claim. In re Roberson, 999 F.2d 1132, 1135 (7th Cir. 1993); Goulet v. Educational Credit Management Corp., 284

F.3d 773, 777 (7th Cir. 2002). This test is commonly known as the "Brunner test". *See* Brunner v. New York State Higher Education Services Corp., 831 F.2d 395 (2nd Cir. 1987). In order to show an "undue hardship", the following elements must be proven:

1. That the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for the debtor and the debtor's dependents if forced to repay the loan;

2. That additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans, and

3. That the debtor has made good faith efforts to repay the loans.

If the debtor fails to establish any one of the elements, then the debtor has failed to meet his burden, the court need not proceed with the inquiry, and the debt remains nondischargeable. Roberson, *supra*, 999 F.2d at 1135.

In order to meet the first element of the Brunner test, the Debtor must show that she lacks the present ability to repay the subject loan and at the same time maintain a minimal standard of living for herself and her dependents. While some courts have held that student loans may be dischargeable in part [*see* In re Brown, 239 B.R. 204 (S.D. Cal. 1999)], or that some loans are dischargeable while others are not [*see* In re Hollister, 247 B.R. 485 (Bankr. W.D. Okla. 2000)], under the Seventh Circuit ruling in Roberson, *supra*, such alternatives are not likely possible in this

-3-

Circuit. In re Bard-Prinzing, 311 B.R. 219 (Bankr. N.D. Ill. 2004).

Debtor is employed as an editor by the Illinois State Bar Association. She earns a gross annual salary of approximately $39,000 and she nets approximately $2250 per month. She and her 85 year-old mother live together, and Debtor's mother is Debtor's dependent. According to her testimony and schedules, Debtor's monthly living expenses include $663 for a home mortgage payment, medical and dental expenses of $160, transportation of $125, food of $400[1], clothing of $50, utilities of $284, home maintenance of $50, laundry and dry cleaning of $60, and insurance of $130. These amounts total $1,892 per month. Debtor also has recreation and cable television expenses, but the Court must exclude those from consideration in evaluating the Debtor's ability to repay the debt. See In re Leahy, No. 02-3136 (slip op. C.D. Ill. Sept. 30, 2002). Debtor is also making voluntary retirement contributions in the amount of $162.50 per month which is not required to maintain Debtor's minimal standard of living.

Thus, based upon Debtor's income ($2,250/mo.) and reasonable living expenses ($1,892/mo.), Debtor has $358 per month income in excess of her necessary living expenses.

---

[1] Debtor testified that the amount she spends is actually closer to $550 per month, but that she frequently provides meals for two nephews who are not her dependents.

Debtor owes $88,244 on the subject indebtedness. The debt incurs interest at a rate of 9 percent per annum. Assuming a ten-year amortization, Debtor's monthly payments on the subject indebtedness would be $1,117.84 per month. Even with a thirty-year amortization, Debtor's monthly payments on the subject indebtedness would be $710.03 per month. Accordingly, the Court finds that the Debtor would be unable to maintain a minimal standard of living and also repay the subject debt. Thus, the first prong of the Brunner test is met.

In order to meet the second element of the Brunner test, the Debtor must prove that, because of additional circumstances, her inability to pay the subject loan is likely to continue for a significant portion of the repayment period of the loan.

Debtor was graduated last in her class of 180 students from Southern Illinois University College of Law sixteen years ago in 1988. Thus, the contemplated repayment period of the loan has most likely run out. After law school, Debtor failed the California Bar Examination, failed the Illinois Bar Examination, then passed the Illinois Bar Examination on her second try. Debtor has been employed in various capacities since graduation, earning between $19,000 per year up to $45,000 per year. She had her own practice for a time and the most she ever earned in a year in that endeavor was $29,000.

Debtor has been employed full-time with the Illinois State Bar Association since July, 2003. As indicated above, she earns approximately $39,000 per year. She has no prospects for a better job. She is sixty years of age. She is diabetic and suffers bouts of depression. Debtor owns an eight year-old car. Debtor has no prospects for inheriting or collecting life insurance in any meaningful amount.

If the Debtor in this case had sought discharge of her student loan obligations prior to the amendment of 11 U.S.C. § 523(a)(8) on October 7, 1998, she would have been entitled, as a matter of law, to a discharge of such obligations under the seven-year test then in effect. Debtor did not do so. Instead, she continued to make payments on the subject indebtedness and continued to struggle to make the degree for which she obtained the loans pay off in some way. It never did. Debtor is now sixty years old, facing an uncertain medical future, and a Spartan retirement. Under these circumstances, the Court finds that circumstances exist which strongly indicate that Debtor's financial situation is likely to continue or deteriorate for the indefinite future. Accordingly, the second prong of the Brunner test has been met.

The third prong of the Brunner test is whether the Debtor has made a good faith effort to repay her loans.

In this case, the Debtor offered into evidence 120 canceled

-6-

checks and money order receipts showing payments on the subject indebtedness from 1992 through 2003. Debtor has paid $10,506.04 on the loans over the years. Debtor made seven payments in 1992 totaling $562.20; eight payments in 1993 totaling $876.88; six payments in 1994 totaling $616.42; seven payments totaling $1,710.98 in 1995; three payments totaling $2,507.62 in 1996; twelve payments totaling $650.00 in 1999; twenty-five payments totaling $880.00 in 2000; twenty-three payments totaling $876.25 in 2001; sixteen payments totaling $752.67 in 2002, and thirteen payments totaling $1,073.02. Given Debtor's employment record, earning history, and personal situation, the Court finds that the Debtor has made a good faith effort to repay her loans. Debtor has paid almost half of the principal amount borrowed. However, because of compounded interest, the Debtor has barely made a dent in the overall indebtedness after the many years since the loans were made.

This Court understands and respects the strong public policy argument which favors the nondischargeability of student loans and the corresponding fiscal goal of maintaining the stability of the student loan program for future generations of students. However, in this case, the Debtor has easily met each of the three elements constituting the <u>Brunner</u> test. Given Debtor's age, her health, her employment history for the past sixteen years, her future

prospects, the age of the subject indebtedness, and Debtor's unquestionable good faith in dealing with her student loans, the Court finds that the subject indebtedness is dischargeable under 11 U.S.C. § 523(a)(8).

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

ENTERED: September 21, 2004

*/s/ Larry Lessen*

LARRY LESSEN
UNITED STATES BANKRUPTCY JUDGE


c:   Steven C. Mills                  Spencer Lee Daniels
     206 S. 6th St.                   411 Hamilton Blvd. #1304
     Springfield, IL 62701            Peoria, IL 61602

     U.S. Trustee
     401 Main St. #1100
     Peoria, IL 61602


CERTIFICATION OF MAILING

The undersigned, deputy clerk of the United States Bankruptcy Court, hereby certifies that a copy of this Opinion was mailed and/or otherwise transmitted this date to the parties listed herein.

Dated: September 21, 2004      */s/ Melissa Gerard*

-8-